949 So.2d 1021 (2006)
David Wyatt JONES, Appellant,
v.
STATE of Florida, Appellee.
David Wyatt Jones, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC04-2217, SC05-1612.
Supreme Court of Florida.
December 14, 2006.
Rehearing Denied February 15, 2007.
*1025 Harry P. Brody and Jeffrey M. Hazen of Brody and Hazen, P.A., Tallahassee, Florida, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General and Cassandra K. Dolgin and Ronald A. Lathan, Jr., Assistant Attorneys General, Tallahassee, Florida, for Appellee/Respondent.
PER CURIAM.
David Wyatt Jones appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained in this opinion, we affirm the trial court's order and deny the petition for a writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
David Wyatt Jones was convicted of the 1995 murder of Lori McRae. The pertinent facts of this case are set forth in this Court's opinion on direct appeal, as follows:
The evidence at trial revealed that McRae was abducted from a parking lot in the early morning hours of January 31, 1995. Her body was found abandoned in a wooded area in a neighboring county. The most likely cause of death was ligature strangulation.
The evidence revealed that over the two days following her abduction, Jones stole $600 from McRae's ATM account. The first withdrawal, for $300, occurred at 3:09 a.m. on the morning of the murder. Jones was captured on the film of the bank's security camera while making that transaction. Jones eventually attempted over 100 withdrawals in the next two days, but only eleven were successful. Jones was apprehended on February 1 near an ATM machine that police were staking out. At the time, he was driving McRae's Chevy Blazer.
When Jones was arrested he had bloody scratches on his face and reddish stains on his jeans, which later DNA testing revealed "almost conclusively" was McRae's blood. Traces of blood were found in the Blazer as well. The State also presented the testimony of two automobile detailers who testified that Jones attempted to have the interior of the Blazer cleaned on the day after McRae's disappearance.
After his arrest, Jones was transported to police headquarters and questioned by Detective Parker of the Jacksonville Sheriff's Office, the lead investigator in the case. Jones was properly advised of his rights under Miranda,[1] and initially denied his involvement in McRae's disappearance. He eventually terminated the interview, invoking his right to remain silent and asking to speak with his attorney. Twenty days later, Jones confessed to Detective Parker that he committed the murder and accompanied police to the location where he had hidden McRae's body. . . .

*1026 McRae's body was badly decomposed; thus, an exact determination of the cause of her death was difficult. The medical examiner opined that she died as a result of "ligature strangulation." Her body exhibited multiple bruises and defensive wounds, and there was a blood stain on her jacket.
There was a rope tied around McRae's ankles, a cord tied around her neck, and on top of the cord a sleeve from a black sweater. The sleeve from the sweater matched a sweater owned by Jones' wife, and rope found in the trunk of Jones' automobile was of the same type as the rope around McRae's ankles. McRae had on jeans, which were unzipped, exposing her pubic area and buttocks. Whether McRae had been sexually abused could not be determined due to decomposition of the genital area. McRae also had on a blouse, which was missing some buttons. Two buttons later found in McRae's vehicle were from that blouse.
Jones v. State, 748 So.2d 1012, 1016 (Fla. 1999). The jury was instructed on both premeditated and felony murder with robbery or kidnapping as the underlying felony. The jury returned a general verdict of guilty of first-degree murder and also found Jones guilty of robbery and kidnapping.
During the penalty phase, Jones presented the testimony of lay and expert witnesses regarding his addiction to crack cocaine and the effect this addiction had on his brain and behavior. Jones also presented testimony about his childhood and adult life before he started using crack cocaine. The State presented evidence of Jones' prior murder conviction as well as victim impact statements from McRae's husband and two sisters.
The jury recommended the death penalty by a vote of nine to three. See id. at 1017. After weighing the aggravating and mitigating circumstances, the trial court followed the jury's recommendation and sentenced Jones to death.[2]
Jones raised thirteen issues on direct appeal.[3] The Court rejected all of Jones' *1027 arguments, finding the alleged errors to be either without merit or harmless beyond a reasonable doubt. The Court therefore affirmed the first-degree murder conviction and sentence of death. See id. at 1028.
Jones filed an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 in which he raised multiple claims. Following a Huff[4] hearing, the trial court ordered an evidentiary hearing on Jones' claims that his trial attorneys were ineffective during jury selection, the guilt phase, and the penalty phase, that the State committed prosecutorial misconduct by making improper statements during penalty-phase closing argument, and that the State withheld material and exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). At the evidentiary hearing, Jones presented several witnesses to support his claims for relief. Dr. Jonathan Lipman, an expert in neuropharmacology, testified about Jones' drug use and addiction, and the effects that the drug use had on Jones' actions at the time of the murder. Dr. Lipman opined that Jones' capacity to appreciate the criminality of his conduct was substantially impaired and that the murder was committed while Jones was under the influence of extreme mental or emotional disturbance. Joann Sealy, Jones' mother, and Carlos Jones, Jones' brother, testified about Jones' childhood. Jackie Doll Jones, Jones' wife, testified regarding her prior criminal history and the events that led to her testimony for the State and the defense at trial.[5] Jeffrey Morrow testified about Jones' drug use in the early and mid-1980s. John Bowden testified regarding his experiences with Jones while they shared the same cell after Jones was arrested for McRae's murder. Finally, Lewis Buzzell and Alan Chipperfield, Jones' trial counsel, testified regarding their recollections of their actions while preparing for and during the trial.
The trial court issued a comprehensive order denying relief. Jones appeals, raising two issues, which include numerous subissues.[6] Jones also petitions for a writ of habeas corpus, raising three claims of ineffective assistance of appellate counsel.[7]

*1028 ANALYSIS

A. MOTION FOR POSTCONVICTION RELIEF
1. Ineffective Assistance of Counsel During July Selection and the Guilt Phase
In his first issue on appeal, Jones asserts that the trial court erred in denying several of his claims of ineffective assistance of counsel during jury selection and the guilt phase of his trial. Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for an ineffective assistance of counsel claim to be successful, the defendant must establish both deficient performance and prejudice:
As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards. Second, as to the prejudice prong, the deficient performance must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined.
Gore v. State, 846 So.2d 461, 467 (Fla.2003) (citations omitted). However, "when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001).[8]
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. See Mungin v. State, 932 So.2d 986, 998 (Fla.2006).
There is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052. In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."
In his first claim, Jones argued that his trial attorneys were ineffective for failing to object, move to strike, or seek a curative instruction when prospective juror Hyers stated that she did not think she could put aside what she had read about the case and render a fair and impartial verdict. The trial court, in an effort to insulate the jury from pretrial publicity, conducted individual voir dire with those potential jurors who indicated that they had heard of the case in the media. At that time, Hyers did not indicate that she had any knowledge of the case. Hyers eventually recalled reading about the case but did not reveal what she read or state any opinion about the case in the presence of the other jurors. She simply expressed doubts about whether she could be fair-minded. Further, Hyers did not serve on *1029 the jury and those persons who did serve stated that they had not prejudged Jones and could follow the law.
We have previously rejected a claim that trial counsel was ineffective for failing to move to strike the venire panel when several potential jurors expressed their feelings about what they had heard about the case. See Johnson v. State, 903 So.2d 888, 896-97 (Fla.2005). We explained that
[i]n order for the statement of one venire member to taint the panel, the venire member must mention facts that would not otherwise be presented to the jury. No venire member in Johnson's case mentioned a fact that would not otherwise be presented to the jury. A venire member's expression of an opinion before the entire panel is not normally considered sufficient to taint the remainder of the panel.
Id. at 897 (citations omitted). As in Johnson, Jones has failed to demonstrate that counsel's failure to object was deficient performance or that he was prejudiced by Hyers' comments. Thus, the trial court correctly denied this claim for relief.
Jones next asserts that the trial court erred in denying his claim that trial counsel were ineffective for failing to object to the prosecutor's statements during jury selection that the victim was the mother of three young children.[9] Specifically, Jones identifies two occasions when the prosecutor asked potential jurors whether this fact would affect their ability to wait until the close of evidence to decide on the appropriate punishment. Our decision in Davis v. State, 698 So.2d 1182 (Fla.1997), is dispositive. In that case, we held that there was no error in allowing the prosecutor to ask "a prospective juror in front of the others whether it would hinder her impartiality if the case involved a learning disabled child," because this question would "determine if any of the jurors had strong feelings or biases that would prevent them from rendering an impartial verdict in the case." Id. at 1190. Similarly, in this case, the prosecutor's two comments that the victim was the mother of three young children were intended to ensure that the potential jurors understood that they were required to wait until all the evidence was presented before making a decision about the death penalty. Because the prosecutor's comments were not improper, the lack of an objection by trial counsel did not constitute ineffective assistance. See Walls v. State, 926 So.2d 1156, 1169 (Fla.2006) (agreeing with the trial court that the prosecutor's comments during closing argument were not improper and concluding that therefore counsel was not ineffective for failing to object to them).
In his third subissue on appeal, Jones contends that the trial court erred in denying his claims that trial counsel were ineffective for failing to investigate the effects of and request a jury instruction on Jones' use of psychotropic medications before and during trial. In its detailed order, the trial court found that these claims were either conclusory or without merit. We agree. Jones did not present any *1030 evidence regarding the details of his pretrial medication or that his need for medication impacted issues such as insanity, competency, suppression of statements, and the ability to form premeditation. Therefore, Jones has failed to prove these allegations of ineffective assistance of counsel.[10] Moreover, trial counsel requested a jury instruction on the administration of psychotropic medication and the trial court agreed to read it to the jury after opening statements. Although the instruction was actually given after the State had presented several witnesses, the trial court related it back to the beginning of trial. Jones has failed to demonstrate that he was prejudiced by this delay. There is no indication in the record that Jones appeared drugged before the jury or acted out in any way. In fact, attorney Buzzell testified at the evidentiary hearing that Jones was polite and conducted himself very well. We affirm the trial court's denial of relief on these claims.
We also affirm the trial court's denial of Jones' claim that trial counsel were ineffective for failing to present evidence during the guilt phase of cocaine addiction and lack of premeditation. In Pietri v. State, 885 So.2d 245, 252-53 (Fla.2004), we rejected a similar claim that defense counsel was ineffective for failing to present a voluntary intoxication defense based on the defendant's persistent use of cocaine on the days prior to the murder.[11] Although Pietri presented several expert witnesses to support his claim, including Dr. Lipman, the same witness who testified in this case, the Court concluded that Pietri failed to present any evidence "to demonstrate that he was in fact intoxicated at the time of the offense" or "any competent evidence proving his inability to form the specific intent to commit the crime." Pietri, 885 So.2d at 252.
Jones asserts that Pietri is distinguishable because Jones was clearly impaired at the time of the murder. However, Jones presented no evidence at the hearing that the killing occurred while he was intoxicated or under the influence of cocaine. Nor did Jones demonstrate that his history of drug use impaired him to the extent that he could not form the required intent for premeditated murder. In fact, as to Jones' state of mind at the time of the crime, Dr. Lipman testified only that he thought both of the statutory mental health mitigators applied. Thus, Jones failed to present any evidence to support his claim that trial counsel were ineffective in this regard.
Moreover, as the trial court noted, attorney Buzzell testified that he and co-counsel considered presenting evidence of Jones' mental state during the guilt phase but decided against it based on his discussions with Dr. Harry Krop, who was appointed to assist the defense. Attorney Buzzell *1031 explained that Dr. Krop indicated that the State would elicit unfavorable information on cross-examination if he were called to testify during the guilt phase. Trial counsel's informed strategic decision not to present this information cannot be considered deficient performance. See Johnson v. State, 769 So.2d 990, 1001 (Fla.2000) ("Counsel's strategic decisions will not be second-guessed on collateral attack."). Accordingly, the trial court properly denied relief on this claim.
In Jones' fifth ineffective assistance of counsel claim during the guilt phase, he asserted that trial counsel should have objected to the State's presentation of evidence and argument concerning an uncharged sexual battery. The trial court denied this claim, finding that trial counsel made a tactical decision not to object to the State's introduction of the physical condition of the victim's body, and instead chose to highlight the inconclusive nature of the State's evidence. The trial court also found that Jones failed to establish that trial counsel were deficient in failing to object to the State's opening statements and closing arguments on this issue because they were fair comments on the evidence. We find no error in the trial court's findings and conclusions.
Jones provides no support for his contention that the State's presentation of evidence of the physical condition of McRae's body was objectionable. Evidence of the condition of the victim's body as found by the police was clearly relevant. Cf. Marquard v. State, 850 So.2d 417, 427 (Fla.2002) (concluding that trial counsel was not ineffective for failing to object to the introduction of the victim's bones and to a video depicting the victim's bones and personal possessions that were scattered throughout the crime scene because the evidence was relevant to the manner in which the victim was murdered); Looney v. State, 803 So.2d 656, 669-70 & n. 9 (Fla.2001) (explaining that crime scene photographs are relevant when they establish the manner in which the murder was committed, show the position and location of the victim as found by police, or assist crime scene technicians in describing the crime scene).
Further, Buzzell testified that defense counsel were aware that the State believed that the evidence supported the inference of a sexual assault and that the defense strategy was to expose the weaknesses in the State's theory. On cross-examination of serologist Diane Hanson, defense counsel elicited testimony that a presumptive test for the presence of semen on an area of Jones' jeans came back negative. Defense counsel also elicited testimony from the medical examiner that the condition of the victim's clothes suggested that she had been dragged to the area where she was found, and testimony from McRae's husband that at times McRae did not wear underwear with her jeans. Counsel's strategic decision to rebut the State's suggestion of a possible sexual assault on cross-examination, rather than object to the evidence, cannot be considered unreasonable under the circumstances of this case. See Occhicone, 768 So.2d at 1048 ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").
In addition, Jones does not identify specifically which comments in the prosecutor's opening statements and closing arguments were objectionable. We assume Jones is referring to the prosecutor's opening statements regarding the condition of McRae's body and the closing argument that McRae's shoes may have been off because Jones wanted her pants off. However, these comments were not improper. *1032 By referring to the way in which McRae's body was found, the prosecutor was merely outlining "what he in good faith expected to be established by the evidence presented at trial," which is the purpose of opening statement. Perez v. State, 919 So.2d 347, 363 (Fla.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 2359, 165 L.Ed.2d 285 (2006). In closing argument, the prosecutor appropriately pointed to an inference that "may reasonably be drawn from the evidence." Griffin v. State, 866 So.2d 1, 16 (Fla.2003) (quoting Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985)). Moreover, the prosecutor did not tell the jury that McRae had been sexually assaulted. Accordingly, trial counsel's failure to object was not deficient performance and the trial court did not err in denying this claim for relief.
Jones next contends that the trial court erred in denying his claim that trial counsel were ineffective for failing to object to the prosecutor's remark during opening statements that McRae's murder was heinous, atrocious, and cruel. Jones asserts that counsel's failure to object to the State's reference to this penalty-phase aggravator in the guilt phase undermines the outcome of both the guilt and penalty phases. Specifically, the prosecutor stated:
We do not know exactly how long he kept her alive, and we don't know exactly what he did to her but we do know enough to know everything that's important to know for the purpose of proving that he's guilty of first degree murder, and not just first degree murder but horrible, heinous, atrocious and cruel first degree murder.
(Emphasis supplied.) We do not decide the issue of deficient performance because Jones has failed to establish prejudice. Given the strong evidence of Jones' guilt, including his confession to the murder and his possession of McRae's vehicle and ATM card, our confidence in the guilty verdict is not undermined by the prosecutor's comment describing the nature of the murder. Cf. Walls, 926 So.2d at 1167 (concluding that the defendant failed to establish that he was prejudiced by counsel's failure to object to one improper prosecutorial comment where the comment was not so prejudicial as to require a new trial). Our confidence in the death sentence is not undermined because as we noted on direct appeal, the HAC aggravator, which was found by the trial court, "indisputably appl[ies] in this case." Jones, 748 So.2d at 1027.
We also reject Jones' claim that trial counsel were ineffective for failing to object to the State's guilt-phase closing arguments. Jones has failed to provide any support for his contention that the arguments he refers to in his brief were objectionable. Further, after reviewing the comments, we conclude that even if they were improper, Jones was not prejudiced by counsel's failure to object. As with the prosecutor's comment during opening statements that the murder was heinous, atrocious and cruel, none of the alleged improper comments during the prosecutor's closing argument undermine our confidence in the jury's guilty verdict.
Next, Jones asserts that the trial court erred in denying his claim that trial counsel were ineffective for failing to object to the prosecutor's reference during opening statements to a racial slur Jones used to describe two African-American males. We previously dealt with this as an evidentiary issue on direct appeal. We determined that any error in allowing Detective Parker to refer to the fact that Jones used a racial slur was harmless beyond a reasonable doubt. See Jones, 748 So.2d at 1023. In reaching this conclusion, we found that there was no "attempt to *1033 inject race as an issue in the trial, or an impermissible appeal to bias and prejudice." Id. We also rejected Jones' argument that the prosecutor elicited improper testimony that Jones had a spider web tattoo, noting that "[t]here was no suggestion ever made to the jury by the State that the spider web tattoo was linked to racism." Id. Jones' allegation of ineffective assistance of counsel is merely a variant of the issues raised on direct appeal and is therefore procedurally barred. See Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla.1994) ("Proceedings under rule 3.850 are not to be used as a second appeal; nor is it appropriate to use a different argument to relitigate the same issue.").
Jones also contends that the trial court erred in denying his claims that trial counsel were ineffective for failing to impeach State witnesses Amy Hudson, a bartender who observed Jones on the night of the murder, and Jackie Doll Jones, Jones' wife. Regarding Hudson, the trial court considered the evidence presented and concluded that the
[d]efendant has failed to establish error on the part of counsel for failing to impeach Ms. Hudson with her deposition testimony or challenge her opinion that the man she saw was a crack addict. Further, assuming arguendo, that counsel's performance was deficient, Defendant has failed to establish prejudice to his case from Ms. Hudson's opinion that the man she saw was a crack addict since Mr. Buzzell testified at the evidentiary hearing that he believed the defense had presented an abundance of evidence to establish that Defendant was a crack addict. Accordingly, Defendant [sic] allegations are without merit.
(Citations omitted.) We affirm the trial court's denial of relief on this claim.
As to Jackie, Jones alleged that trial counsel failed to investigate sufficiently to discover that Jackie had an outstanding warrant in Texas, and failed to present evidence of the full scope of her deal with the State to testify. We agree with the trial court that Jones failed to establish deficient performance. At the evidentiary hearing, Jackie testified that at the time of the trial, neither she nor the State were aware of the charges in Texas. She also stated that she did not have a deal with the State in exchange for her testimony at Jones' trial. Attorney Buzzell testified that he did not recall Jackie saying anything about a crime in Texas. Jones did not present evidence that anyone involved in Jones' trial, including the State or Jackie, knew of the outstanding warrant in Texas or that Jackie had any deals with the State. Accordingly, the trial court correctly denied this claim for relief.
In his final claim of ineffective assistance of counsel during jury selection and the guilt phase, Jones asserts that the trial court erred in denying his claim that the cumulative effect of trial counsel's failures requires relief. Because we have concluded that the trial court correctly denied Jones' other claims of ineffective assistance of counsel, we affirm the denial of Jones' claim of cumulative error. See Holland v. State, 916 So.2d 750, 759 (Fla.2005) (concluding the trial court properly denied defendant's claim that the cumulative effect of trial counsel's errors denied him a fair trial where defendant's individual claims were either legally insufficient, procedurally barred, or meritless), cert. denied, ___ U.S. ___, 126 S.Ct. 1790, 164 L.Ed.2d 531 (2006).
2. Ineffective Assistance of Counsel During the Penalty Phase
In his next issue on appeal, Jones argues that the trial court erred in denying *1034 three claims that trial counsel provided ineffective assistance during the penalty phase. We first address Jones' claim that counsel were ineffective for failing to object to a portion of the prosecutor's opening statement that Jones asserts characterized his crack cocaine use as an "excuse." Once again, Jones has failed to establish either deficiency in failing to object or prejudice. The prosecutor did not use the word "excuse" and her comments were based on the evidence she believed the defense would present and her belief that this evidence did not sufficiently mitigate the murder to warrant a life sentence. Cf. Perez, 919 So.2d at 363 (stating that the purpose of opening statements is "for counsel to outline what he [or she] in good faith expected to be established by the evidence presented at trial"). In fact, the defense did present extensive evidence of Jones' history of drug abuse and the effect this drug abuse had on Jones' behavior. Accordingly, the trial court did not err in denying this claim for relief.
Jones next asserts that the trial court erred in denying his claim that trial counsel were ineffective for failing to investigate and present mental health mitigation. To support his claim, Jones presented Dr. Lipman, who testified that Jones is someone who is "constitutionally vulnerable to experiencing the psychosis producing effect of cocaine and other stimulants." Dr. Lipman explained that when first used, crack cocaine produces euphoria and a sensation of competence and energy, reduces sleep, suppresses the appetite, and can also cause irritability and anxiety. When crack is used for an extended period, the negative side effects become more pronounced and the sensation of irritability and anxiety become full-blown paranoia and psychosis. A person in this condition typically suffers from hallucinations and delusions, and has very poor contact with reality. Dr. Lipman explained that in Jones' case, the cocaine brought out an underlying schizophrenic condition. Dr. Lipman further opined that because of Jones' extensive use of crack cocaine, Jones was acting under the influence of chronic cocaine psychosis at the time the murder was committed. Dr. Lipman concluded that Jones' capacity to appreciate the criminality of his conduct was substantially impaired and that the murder was committed while Jones was under the influence of extreme mental or emotional disturbance.
On cross-examination, Dr. Lipman clarified that his opinions were based on his independent review of Jones' symptomatology as well as Jones' self-reports. Although Dr. Lipman was aware that some of the records he reviewed were produced for trial, he was not sure what was actually used at trial. Dr. Lipman did not discuss whether defense counsel had a strategy in choosing not to use certain materials at trial. Dr. Lipman recalled that one of the mental health experts who examined Jones prior to trial noted that another inmate had reported that Jones stated that if he said he used drugs, he would not get the death penalty. Dr. Lipman testified that he would have told the penalty-phase jury that Jones suffers from an underlying psychotic vulnerability and he would have linked this to a previous murder committed by Jones and the crimes committed in this case. Dr. Lipman believed that although Jones knew what he was doing at the time of the murder, i.e., Jones was not insane, Jones' conduct was the product of a deranged mind.
This Court has recognized that "the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated." State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002). "[A]n attorney *1035 has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." Ragsdale v. State, 798 So.2d 713, 716 (Fla. 2001) (quoting State v. Riechmann, 777 So.2d 342, 350 (Fla.2000)) (alteration in original); see also Wiggins v. Smith, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). However, when presenting claims that counsel was ineffective for failing to present mitigating evidence, the defendant has the burden of showing that any deficiency in counsel's performance "deprived the defendant of a reliable penalty phase proceeding." Rutherford v. State, 727 So.2d 216, 223 (Fla.1998).
This is not a case in which trial counsel failed to conduct any meaningful investigation into mitigation. Defense attorneys Buzzell and Chipperfield both recounted their investigation into mental health mitigation. Indeed, Buzzell stated that the defense team spent substantial time on this issue. Additionally, the trial record establishes that Jones' mental health and serious cocaine addiction were major themes in this case. As this Court noted on direct appeal, counsel presented the testimony of two experts during the penalty phase:
Defense counsel also called Drew Edwards to testify as an expert in the penalty-phase proceedings. Edwards offered his testimony as an expert regarding the effect of cocaine on the brain. Edwards testified that Jones was a crack addict, suffering from these symptoms. Edwards made clear that he did not believe addiction to cocaine is an excuse for crime, yet he admitted that a cocaine addict would suffer impairment of his ability to conform his conduct to the requirements of the law. Edwards testified that despite his addiction, Jones would have always known the difference between right and wrong.
Another defense expert testified that Jones has an I.Q. of 78, placing him between the fifth and ninth percentiles of the population. The expert testified that standardized tests revealed that Jones had little ability to control his impulses, but admitted that his motivation to get the right answer during his testing appeared to "vary." She opined that he was able to conform his conduct to the requirements of the law, "provided he's not impaired in some other way."
Jones, 748 So.2d at 1017.
Although Jones acknowledges that trial counsel did pursue mental health mitigation, he argues that trial counsel did not adequately investigate, prepare, and present evidence on this issue. We disagree. This is not a case where a mental health defense was considered and then summarily rejected. Rather, mental health mitigation was vigorously pursued, the jury was instructed on statutory mitigation, and the trial court found mitigation:
[T]he trial court did find as a mitigating circumstance that Jones was a crack addict, that the felony was committed while Jones was under the influence of extreme mental or emotional disturbance, and that Jones' addiction to cocaine substantially impaired his ability to conform his behavior to the requirements of the law. The trial court gave all these mitigators some weight.
Id. at 1025. Accordingly, trial counsel's performance regarding the presentation of mitigation was not deficient and we affirm the trial court's denial of this claim for relief.
In his last issue on appeal, Jones asserts that the trial court erred in denying his claim that trial counsel were ineffective during the penalty phase for failing to investigate and present lay witness mitigation testimony. At trial, the defense presented the testimony of several lay witnesses *1036 to establish mitigation. Jones' wife, Jackie, testified about the severity of Jones' drug use during the months prior to the murder. She stated that when Jones was not using drugs he was hardworking, courteous, affectionate, and kind. Jones' sister, Cynthia Bryant, testified that she and Jones have a close relationship and that Jones is a different person when he is using drugs. Jones' mother, Joann Sealy, gave detailed testimony about Jones' childhood and her knowledge of Jones' past criminal history and use of drugs. Last, Wayne Pierce, who employed Jones for a period of three to four months in 1993 or 1994, testified that Jones did his assigned jobs well, did not need constant supervision, and was not a violent person.
At the evidentiary hearing, Jones presented three lay witnesses to support this claim of ineffective assistance, one of which was his mother, whose testimony was consistent with her testimony at trial. Jones' current claim that his brother Carlos should have testified regarding instances of abusive behavior by their father and that another witness, Jeffrey Morrow, should have testified about Jones' drug use in the mid-eighties, does not establish any deficiency or prejudice. This lay testimony would, at best, have been cumulative to what was presented at trial. Counsel's performance "cannot be deemed deficient for failing to present cumulative evidence." Holland, 916 So.2d at 757. Moreover, Carlos admitted that Jones was much younger than he was and, therefore, probably did not experience as much of their father's violence. Morrow was incarcerated for grand theft at the time of the hearing and had no personal knowledge of McRae's murder or what Jones was doing in the days leading to the murder. In sum, Jones failed to present any additional compelling lay witness mitigation testimony to support his ineffective assistance of counsel claim. The trial court properly found that Jones failed to establish that trial counsel's failure to present this evidence was deficient performance. Thus, the trial court did not err in rejecting this claim.

B. PETITION FOR WRIT OF HABEAS CORPUS
In his habeas petition, Jones raises three claims of ineffective assistance of appellate counsel. Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of appellate counsel, this Court must determine
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999) (quoting Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988)); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). In raising such a claim, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069. "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). We address Jones' claims separately below.
1. Presentation of Evidence and Argument on Uncharged Sexual Battery
In his first claim, Jones asserts that appellate counsel was ineffective for failing *1037 to argue on direct appeal that the State improperly presented evidence and argument on sexual battery. As the State correctly observes, Jones does not identify the legal basis upon which appellate counsel should have presented this issue on direct appeal. Instead, Jones refers to both allegedly preserved and unpreserved errors from the prosecutor's guilt-phase opening statement, guilt- and penalty-phase closing arguments, and testimony adduced at trial. He contends that together this argument and testimony constituted the presentation of evidence of an uncharged sexual battery.
The unpreserved errors that Jones asserts appellate counsel should have raised on direct appeal are: (1) the prosecutor's references during guilt-phase opening statements to the condition in which McRae's body was found; (2) the medical examiner's testimony regarding the condition in which McRae's body was found; (3) the prosecutor's question to serologist Diane Hudson regarding a hypothetical rape case and a mixed DNA stain; (4) Officer Grant's testimony that when he arrested Jones, Jones had "rape marks from fingernails" on his face; (5) comments by the prosecutor during guilt-phase closing arguments that McRae's shoes were off and pants were down; and (6) comments by the prosecutor during penalty-phase closing argument that "we have to deter people from robbing and raping and kidnapping people," and that Jones decided to take McRae "out in the middle of nowhere and do God knows what with her later." Generally, "appellate counsel cannot be ineffective for failing to raise issues not preserved for appeal. The only exception to this rule is when the claim involves fundamental error." Archer v. State, 934 So.2d 1187, 1205 (Fla.2006) (citations omitted). Fundamental error is error that reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1996) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)). Error during the penalty phase is fundamental if it is "so prejudicial as to taint the jury's recommended sentence." Fennie v. State, 855 So.2d 597, 609 (Fla.2003) (quoting Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999)). We conclude that even if improper, the testimony and comments set forth above, either individually or cumulatively, do not rise to the level of fundamental error.
As to the prosecutor's remarks during guilt- and penalty-phase closing arguments about the condition of McRae's clothes that were objected to by defense counsel, this Court has explained:
With regard to evidentiary objections which trial counsel made during the trial and which appellate counsel did not raise on direct appeal, this Court evaluates the prejudice or second prong of the Strickland test first. In doing so, we begin our review of the prejudice prong by examining the specific objection made by trial counsel for harmful error. A successful petition must demonstrate that the erroneous ruling prejudiced the petitioner.
Jones v. Moore, 794 So.2d 579, 583 (Fla. 2001). We conclude that the closing arguments referred to in Jones' petition, if error, were harmless beyond a reasonable doubt.
In sum, Jones' assertion that the errors would have entitled him to relief if raised on direct appeal is without merit. We therefore deny this claim for relief.
2. Presentation of Evidence and Argument Regarding Knife and Unsubstantiated Stab Wounds
In his next habeas claim, Jones asserts that appellate counsel was ineffective for *1038 failing to argue on direct appeal that the State improperly presented evidence and argument regarding a knife and unsubstantiated stab wounds. As with his previous claim, Jones does not identify the legal basis upon which appellate counsel should have presented this issue on direct appeal. Instead he refers to both allegedly preserved and unpreserved errors from the prosecutor's guilt-phase opening and closing statements and testimony adduced at trial, and argues that together this constituted reversible error that should have been raised on direct appeal. We address the preserved and unpreserved alleged errors separately below.
(1) Unpreserved errors
The unpreserved errors that Jones contends appellate counsel should have raised on direct appeal are: (1) the prosecutor's comment during opening statements that there was a knife in McRae's car "that belongs to [Jones] or if it doesn't belong to him it certainly doesn't belong to Lori McRae or her husband"; (2) the medical examiner's testimony that due to the lack of blood on McRae's brassiere he could rule out severe injury to McRae's chest but could not rule out that her throat had been cut, and then his testimony that he could not determine whether a hole in the upper torso of McRae's chest was caused by "decomposition" or "instrumentation"; and (3) the prosecutor's comment during closing arguments that it looked like one of McRae's shoelaces had been ripped or cut and rhetorical question about whether this had anything to do with the knife found in the car. We conclude that neither the prosecutor's comments nor the medical examiner's testimony were objectionable, much less fundamental error.
(2) Preserved errors
Florida Department of Law Enforcement Officer Allen Miller testified regarding the items that were processed from McRae's vehicle. When he was asked by the State why he returned to the vehicle to process evidence from the front console that had been photographed during the original search, Miller responded:
Well, at the time of the original processing it was noted the items that were in the console, a pack of playing cards, some cigarettes, cassette tapes, cologne and a small paring knife was in there. And after the postmortem examination it was revealed that the victim had received some stab wounds.

(Emphasis supplied.) Trial counsel objected and moved for a mistrial. The trial court denied the motion and gave the following curative instruction:
Ladies and gentlemen of the jury, let me give you a correct statement here. The last statement that the witness gave in response to a question from [the prosecutor] was involving some stab wounds on the victim. There is  that was a misstatement by Mr. Miller, the witness, there has been no evidence of any stab wounds on the victim nor will there be any concerning stab wounds on the victim, so you're to disregard that, that's absolutely a misstatement on Mr. Miller's part, okay.
This Court has explained that "[a] motion for mistrial is properly denied where the matter on which the motion is based is rendered harmless by a curative instruction." Perez, 919 So.2d at 364. Although Miller misspoke when he stated that the postmortem examination revealed stab wounds, the trial court quickly corrected this error by informing the jury that there had not been and would not be any evidence presented that the victim was stabbed. Thus, Miller's misstatement was rendered harmless.
*1039 Trial counsel also objected to the introduction of the paring knife into evidence, arguing that the knife was not relevant. The trial court overruled the objection, finding that the knife was relevant as evidence found in the car and processed by police. We conclude that the trial court did not abuse its discretion in admitting the knife into evidence. The knife was found in the victim's car and was relevant to the police investigation at one of the crime scenes.
Because both the preserved and unpreserved errors regarding the paring knife and stab wounds are without merit, appellate counsel was not ineffective for failing to raise them on direct appeal. We therefore deny this claim for relief.
3. Alleged Improper Comments on Jones' Credibility
In his final habeas claim, Jones asserts that appellate counsel was ineffective for failing to argue on direct appeal that Detective Parker improperly commented on Jones' credibility. During his testimony, Parker was asked to relate the substance of his interviews with Jones. Parker noted several times that there were discrepancies in Jones' statements. Parker also recounted his specific responses to Jones during these interviews, in which he expressed doubt about Jones' honesty.
We conclude that Parker's testimony relating to the substance of his interviews with Jones was not a prohibited comment on Jones' credibility. This Court has explained that "allowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the jury to determine a witness's credibility." Knowles v. State, 632 So.2d 62, 65-66 (Fla.1993) (emphasis supplied). Relying in part on this principle, the Court in Knowles held that for a number of reasons, it was improper for the State to ask the defendant whether he thought the State's witnesses were lying. See id. at 65. In Page v. State, 733 So.2d 1079, 1081 (Fla. 4th DCA 1999), which is cited by Jones in his petition, the court ruled that it was harmful error to fail to strike a police officer's testimony as to his opinion on the credibility of a confidential informant who also testified at trial. In this case, Detective Parker was testifying as to the circumstances that led to Jones' confession to murder. Although Parker's testimony indicated that he doubted the veracity of Jones' statements at the time of the interviews, Parker did not comment on the credibility of any witness that testified at trial. Thus, even if Jones had raised this issue on appeal, he would not have prevailed. We deny habeas relief on this claim.

CONCLUSION
For the reasons discussed above, we affirm the trial court's denial of Jones' motion for postconviction relief and deny Jones' petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The trial court found four aggravating circumstances: (1) the murder was committed during the course of a kidnapping and robbery; (2) Jones had previously been convicted of a violent felony (murder); (3) the murder was especially heinous, atrocious, or cruel (HAC); and (4) the murder was committed to avoid arrest. See id. The trial court found two statutory mitigators, which it gave some weight: (1) Jones' capacity to appreciate the criminality of his conduct was substantially impaired; and (2) the capital felony was committed while Jones was under the influence of extreme mental or emotional disturbance. The trial court also gave some weight to three nonstatutory mitigators: (1) Jones was a crack addict; (2) Jones is the father of a teenaged son and was both a good worker and provider when he was not using drugs on a regular basis; and (3) jail records after the arrest for the McRae murder indicated that Jones had exhibited signs of a "psychotic episode." See id.
[3] These issues were: (1) whether Jones' confessions were obtained in violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); (2) whether Jones was entitled to a new trial based on Detective Parker's testimony regarding Jones' invocation of his right to remain silent; (3) whether Detective Parker's reference to a racial slur used by Jones during his statement to police and reference to a spider tattoo on Jones' arm allegedly linked with unrelated racial killings required a new trial; (4) whether the evidence was sufficient to establish premeditated murder; (5) whether the trial court committed reversible error in refusing to allow the penalty-phase testimony of a witness who would have testified about the impact of crack cocaine; (6) whether the admission of details and photographs regarding the defendant's prior murder conviction required a new penalty-phase proceeding; (7) whether the trial court's refusal to allow Jones' prior counsel to testify regarding a psychiatric report prepared in 1986 that found Jones incompetent required a new trial; (8) whether the evidence supported the avoid arrest aggravator; (9) whether the trial court erred in denying defense counsel's motion to withdraw prior to the penalty-phase proceeding; (10) whether the trial court erred in allowing the State to introduce victim impact evidence; (11) whether a new penalty phase was required because the trial court substituted "or" for "and" in the HAC jury instruction, and whether the HAC instruction was unconstitutional; (12) whether the trial court erred in instructing the jury that an aggravating circumstance could be based on the felony underlying the felony-murder conviction; and (13) whether the death penalty was unconstitutional. Jones, 748 So.2d at 1017 n. 3.
[4] Huff v. State, 622 So.2d 982, 983 (Fla.1993).
[5] Mrs. Jones testified for the State during the guilt phase and for the defense during the penalty phase.
[6] These issues are: (1) whether the trial court erred in denying Jones' claim of ineffective assistance of trial counsel during jury selection and the guilt phase; and (2) whether the trial court erred in denying Jones' claim of ineffective assistance of trial counsel during the penalty phase.
[7] These claims are: (1) appellate counsel was ineffective for failing to raise on direct appeal that the State improperly presented evidence and argument on sexual battery; (2) appellate counsel was ineffective for failing to raise on direct appeal that a witness improperly commented on Jones' credibility; and (3) appellate counsel was ineffective for failing to raise on direct appeal that the State improperly presented evidence and argument regarding a knife and unsubstantiated stab wounds.
[8] We have expressed concerns about trial courts limiting evidentiary hearings on ineffective assistance claims to only one of the Strickland prongs. See Henry v. State, 937 So.2d 563, 573-74 (Fla.2006). However, these concerns do not apply to appellate review of ineffectiveness claims.
[9] Jones also asserts that trial counsel should have objected when the victim's husband testified that he lived with "kids." We conclude that the trial court correctly found that Jones' allegations were conclusory and therefore insufficient to warrant relief. See Lott v. State, 931 So.2d 807, 816 (Fla.2006) ("[W]e have repeatedly held that `conclusory allegations are insufficient to warrant relief' on an ineffective assistance claim.") (quoting Wright v. State, 857 So.2d 861, 877 (Fla.2003)). Moreover, trial counsel's failure to object to this isolated ambiguous answer by the victim's husband cannot be deemed an omission that is "outside the broad range of competent performance under prevailing professional standards." Gore, 846 So.2d at 467.
[10] Although Jones asserts that Dr. Lipman and John Bowden's testimony support his allegations, neither of these witnesses testified regarding any medication given to Jones.
[11] The Legislature has since eliminated the defense of voluntary intoxication. Section 775.051, Florida Statutes (2006), which became effective on October 1, 1999, provides in full:

Voluntary intoxication resulting from the consumption, injection, or other use of alcohol or other controlled substance as described in chapter 893 is not a defense to any offense proscribed by law. Evidence of a defendant's voluntary intoxication is not admissible to show that the defendant lacked the specific intent to commit an offense and is not admissible to show that the defendant was insane at the time of the offense, except when the consumption, injection, or use of a controlled substance under chapter 893 was pursuant to a lawful prescription issued to the defendant by a practitioner as defined in s. 893.02.