[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11497
_____

D. C. Docket No. 3:07-cv-00146-TJC

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2010
JOHN LEY
CLERK

DAVID WYATT JONES,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

Before BLACK, PRYOR and MARTIN, Circuit Judges.

PRYOR, Circuit Judge:

David Wyatt Jones is a Florida inmate sentenced to death who seeks a certificate of appealability to appeal the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. Jones has failed to make a substantial showing of the denial of a constitutional right. We deny his application for a certificate of appealability.

## I. BACKGROUND

A jury convicted Jones of the robbery, kidnapping, and murder of Lori McRae. Jones v. State (Jones I), 748 So. 2d 1012, 1016 (Fla. 1999). The evidence at trial proved that Jones abducted McRae from a parking lot early on the morning of January 31, 1995, strangled her to death, and, over the next two days, attempted more than 100 times to withdraw cash from several automated teller machines using McRae's bank card. Jones netted $600. Id. The police arrested Jones on February 1 because he was driving McRae's Chevy Blazer near a teller machine that they had been monitoring. Id. Twenty days later, Jones confessed to murdering McRae and directed police to the field in which he had dumped her body. Id.

At the penalty phase, Jones presented mitigation evidence. Jones presented lay and expert testimony regarding his addiction to crack cocaine and how this

2

addiction affected his brain and behavior.  Jones v. State (Jones II), 949 So. 2d 1021, 1026 (Fla. 2006).  He also offered testimony regarding his childhood and his adult life before he began abusing crack cocaine.  Id.

The jury recommended a sentence of death by a vote of nine to three, and the trial court accepted the recommendation.  Id.  The trial court found four aggravating circumstances: Jones committed the murder during the course of a robbery and kidnapping; Jones had a prior conviction of a violent felony (murder); the murder was especially heinous, atrocious, or cruel; and Jones committed the murder to avoid arrest.  Id. at 1026 n.2.  The trial court also found and gave some weight to two statutory mitigators: Jones's ability to appreciate the criminality of his conduct was substantially impaired, and Jones committed the murder while under the influence of extreme mental or emotional disturbance.  Id.  The trial court also accorded some weight to three nonstatutory mitigators: Jones was addicted to crack cocaine; Jones was the father of a teenage son, and he was a hard worker who provided for his family when he was not abusing drugs; and records of Jones's incarceration after his arrest for the murder of McRae proved that he had suffered a "psychotic episode."  Id. (internal quotation marks omitted).

Jones raised numerous arguments in his direct appeal, only one of which is relevant to his application for a certificate of appealability:  Jones argued that the

3

"prosecution introduced irrelevant evidence suggesting that [he] harbored a racial prejudice against African-Americans." Jones I, 748 So. 2d at 1022. Jones argued that the trial judge should not have permitted Detective Parker to testify that, in a post-arrest interview, Jones explained several scratches on his face by stating that he had been robbed by two "niggers." Id. Jones also argued that the trial judge should not have permitted two witnesses, who testified that Jones approached them about having McRae's Blazer cleaned in the days after the abduction, to identify Jones by a distinctive spider web tattoo on his elbow. Jones contended that the jurors would associate his tattoo with white supremacist activity. Id. at 1023. The Florida Supreme Court rejected all of Jones's arguments in a thorough opinion.

In June 2001, Jones filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and argued numerous grounds for relief, and three of the arguments that Jones raised in his motion are relevant to this appeal. First, Jones argued that his trial attorneys were ineffective for failing to object to the presentation of evidence and argument that he sexually assaulted McRae before killing her. Jones contended that this evidence was inadmissible because the state did not charge a sexual assault. Second, Jones argued that his trial attorneys were ineffective for failing to object to the evidence that suggested that

4

he had a racial bias.  Third, Jones argued that his attorneys were ineffective for failing to investigate and present mental health mitigation evidence.  In support of his third claim, Jones offered the testimony of Dr. Jonathan Lipman, an expert in neuropharmacology.  Dr. Lipman examined Jones after Jones's trial and concluded that Jones was "constitutionally vulnerable to experiencing the psychosis producing effect of cocaine and other stimulants" and that Jones's abuse of crack cocaine may have aggravated an underlying "psychosis spectrum disorder" that was "probably schizoaffective."  The trial court rejected each of Jones's claims on the merits.  The Florida Supreme Court affirmed in another thorough opinion. Jones II, 949 So. 2d 1021.

In March 2007, Jones filed a petition for a writ of habeas corpus in the district court.  Jones alleged fifteen grounds for relief, two of which were claims of ineffective assistance of trial and appellate counsel with multiple subparts.  The district court denied the petition.  Jones v. McNeil, No. 3:07-cv-146-J-32 (M.D. Fla. Mar. 9, 2010).  The district court also denied Jones a certificate of appealability.  Id.

## II.  STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY

5

This Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 326, 123 S. Ct. 1029, 1034 (2003). "Where, as here, the Antiterrorism and Effective Death Penalty Act ('AEDPA') applies, [w]e look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason." Lott v. Att'y Gen., Fla., 594 F.3d 1296, 1301 (11th Cir. 2010) (alteration in original) (internal quotation marks omitted).

### III. DISCUSSION

Jones's application does not identify by number the grounds stated in the district court about which jurists of reason could differ, but construed in the light of the record and his petition for a writ of habeas corpus, cf. Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998), Jones's application requests a certificate of appealability on four grounds. Jones argues, first, that his trial attorneys were ineffective for not objecting to evidence and argument that he sexually assaulted McRae; second, that his trial attorneys were ineffective for not

6

trying to exclude evidence that Jones used a racial slur in a post-arrest interview and has a tattoo of a spider web that he says is associated with white supremacist activity; third, that the state employed a strategy of injecting race into his trial; and fourth, that his trial attorneys were ineffective for failing to investigate and present mental health mitigation evidence during the penalty phase of his trial. Jones also asserts that he "does not waive the appealability of any claim raised in the habeas proceeding" and urges us to "issue a Certificate of Appealability as to every ground and claim made in the proceeding." We conclude that Jones has not made a substantial showing of the denial of a constitutional right as to any of the four grounds that he specifically argues in his application and that he has waived any right to a certificate of appealability as to all other grounds.

A. *Ground One: Ineffective Assistance Regarding Evidence of Sexual Assault*

Jones argues that "trial counsel should have objected to the State's presentation of evidence and argument that he committed a rape or sexual battery on the victim." Jones contends that the lower courts "conclude[d] that the State's conduct was not objectionable and that[] essentially did not occur." Jones's only legal argument, which he does not support with citations of authority, is a conclusion: "Certainly, reasonable jurists might differ on this issue." We reject this argument.

7

The Florida Supreme Court ruled that Jones's attorneys made a reasonable tactical decision not to object to the evidence, but to argue instead that the evidence did not support an inference of a sexual assault:

> Jones provides no support for his contention that the State's presentation of evidence of the physical condition of McRae's body was objectionable. Evidence of the condition of the victim's body as found by the police was clearly relevant.
>
> Further, [trial counsel] Buzzell testified that defense counsel were aware that the State believed that the evidence supported the inference of a sexual assault and that the defense strategy was to expose the weaknesses in the State's theory. On cross-examination of serologist Diane Hanson, defense counsel elicited testimony that a presumptive test for the presence of semen on an area of Jones' jeans came back negative. Defense counsel also elicited testimony from the medical examiner that the condition of the victim's clothes suggested that she had been dragged to the area where she was found, and testimony from McRae's husband that at times McRae did not wear underwear with her jeans. Counsel's strategic decision to rebut the State's suggestion of a possible sexual assualt on cross-examination, rather than object to the evidence, cannot be considered unreasonable under the circumstances of this case.
>
> In addition, Jones does not identify specifically which comments in the prosecutor's opening statements and closing arguments were objectionable. We assume Jones is referring to the prosecutor's opening statements regarding the condition of McRae's body and the closing argument that McRae's shoes may have been off because Jones wanted her pants off. However, these comments were not improper. By referring to the way in which McRae's body was found, the prosecutor was merely outlining "what he in good faith expected to be established by the evidence presented at trial," which is the purpose of opening statements. . . . In closing argument, the prosecutor appropriately pointed to an inference that "may reasonably be drawn from the evidence." Moreover, the prosecutor did not tell the jury that McRae had been sexually assaulted. Accordingly, the trial counsel's failure to object was

8

not deficient performance and the trial court did not err in denying this claim for relief.

Jones II, 949 So. 2d at 1031–32 (citations omitted).

Jurists of reason could not debate the decision of the district court to deny relief on this ground. The record supports the finding that Jones's attorneys made the tactical decision described by the Florida Supreme Court, and it is not debatable that the ruling of that court was a reasonable application of clearly established federal law.

B. *Ground Two: Ineffective Assistance Regarding Evidence of Racial Bias*

In the last numbered paragraph of his application, Jones obliquely references the argument in his petition that his attorneys were ineffective for failing to object to evidence that Jones used a racial slur in a post-arrest interview and has a tattoo that he says jurors would associate with white supremacist activity. Jones does not explain why the decision of the district court to deny relief on this ground is arguably wrong. We cannot see why it is.

As an initial matter, we agree with the district court that Jones is not procedurally barred from raising this claim in federal court. On the appeal of the denial of Jones's motion under Rule 3.850, the Florida Supreme Court rejected this claim of ineffective assistance of counsel claim as "procedurally barred"

9

because Jones's "allegation of ineffective assistance of counsel is merely a variant of the issues [of the admissibility of the evidence] raised on direct appeal." Id. at 1033. The Florida Supreme Court did not employ a state procedural rule to avoid deciding Jones's claim on the merits; it only declined to reconsider its prior ruling on an issue that it found determinative of the claim of ineffective assistance of counsel. See Grossman v. McDonough, 466 F.3d 1325, 1348 (11th Cir. 2006). The "refusal to re-adjudicate this issue on the merits a second time does not bar federal habeas review." Green v. Nelson, 595 F.3d 1245, 1249 n.1 (11th Cir. 2010).

On direct appeal, the Florida Supreme Court had decided that the trial court did not err in admitting either the evidence that Jones used a racial slur (and that, if it had, the error was harmless) or the evidence of Jones's spider web tattoo:

> In this case the jury was informed that Jones used a racial slur when he first gave his version of events to explain the scratches on his face in an attempt to deny his involvement in the murder. The detective did not repeat the racial slur but only indicated that a racial slur was used. Therefore, in this case we do not agree that the comments constituted impermissible appeals to the biases or prejudices of the jurors.
> . . . .
> . . . [I]n this case, we do not find that there was any attempt to inject race as an issue in the trial, or an impermissible appeal to bias and prejudice. We further note that Jones was a white male charged with murdering a white female. In addition, the actual racial slur was not used before the jury and the comment was not repeated or subsequently

10

highilghted.  Based on the foregoing, we find that even if the admission of this reference to Jones using a racial slur was error, it was harmless beyond a reasonable doubt.

Defendant also argues in this point on appeal that the prosecutor elicited improperly prejudicial testimony that the defendant had a spider web tattoo on his elbow, allegedly associated with white supremacist gang activity.  The only evidence regarding the tattoo during the trial was elicited from . . . [two] witnesses [who] testified that they noticed Jones' distinctive spider web tattoo at the time they encountered him [when he attempted to have the interior of McRae's Blazer cleaned], and Jones was asked to display this tattoo for the jury.

There was no suggestion ever made to the jury by the State that the spider web tattoo was linked to racism, and it was only referred to before the jury as a distinctive characteristic assisting the witnesses in identifying the defendant.  Accordingly, we find no error in the admission of this testimony.

Jones I, 748 So. 2d at 1023 (citations omitted).

Jurists of reason would not debate the decision of the district court to deny relief on this ground.  Again the record supports the description of the evidence by the Florida Supreme Court, and it is not debatable that the Florida Supreme Court reasonably applied clearly established federal law.

*C.  Ground Three: State Strategy of Using Race to Inflame the Jury*

Jones argues that the "lower courts have not, in [his] estimation, persuasively addressed [his] contention that the State utilized an explicit strategy of seeking to inflame the jury for the purpose of obtaining the death recommendation."  Jones cites the testimony regarding his spider web tattoo and

11

Detective Parker's testimony that Jones used a racial slur in a post-arrest interview. He does not, however, cite any legal authority in support of this argument. Jones's application for a certificate of appealability is unclear, but we construe this argument as referring to the claim in his petition that the state trial court should have excluded all evidence of his alleged racial bias. Jones does not explain how the introduction of this evidence violated his constitutional rights.

No reasonable jurist could debate the decision of the district court to deny relief on this ground. In the district court, Jones argued that the "United States Supreme Court has held that risk of racial prejudice affecting the outcome of a criminal justice process is unacceptable and must be guarded against" and cited two decisions in support of that general proposition. See McClesky v. Kemp, 481 U.S. 279, 107 S. Ct. 1756 (1987); Turner v. Murray, 476 U.S. 28, 106 S. Ct. 1683 (1986). These authorities do not even hint that the decision of the Florida Supreme Court to deny Jones relief on this ground was an unreasonable application of clearly established federal law.

### D. Ground Four: Ineffective Assistance Regarding Mental Health Mitigation Evidence

Jones argues that his trial attorneys were ineffective because they "should have presented available mental-health mitigation." Jones's application

summarizes the testimony of Dr. Lipman and states that "reasonable jurists could differ on the question[] of whether such powerful and extensive mitigation should have been presented for the jury's consideration." Jones's only legal argument that his attorneys performed ineffectively is that the Supreme Court "has repeatedly stated that, under Hitchcock[ v. Dugger, 481 U.S. 393, 107 S. Ct. 1821 (1987),] and Lockett[ v. Ohio, 438 U.S. 586, 98 S. Ct. 2954 (1978),] the jury should know the person they are being asked to sentence to death." Jones has not established that he is entitled to a certificate of appealability on this ground.

The Florida Supreme Court rejected this claim of ineffective assistance of counsel because Jones's attorneys investigated his mental health, they presented expert testimony regarding his mental functioning and drug addiction, and the trial court found mitigation:

> This is not a case in which trial counsel failed to conduct any meaningful investigation into mitigation. Defense attorneys Buzzell and Chipperfield both recounted their investigation into mental health mitigation. Indeed, Buzzell stated that the defense team spent substantial time on this issue. Additionally, the trial record establishes that Jones' mental health and serious cocaine addiction were major themes in this case. As this Court noted on direct appeal, counsel presented the testimony of two experts during the penalty phase:
>> Defense counsel also called Drew Edwards to testify as an expert in the penalty-phase proceedings. Edwards offered his testimony as an expert regarding the effect of cocaine on the brain. Edwards testified that Jones was a crack addict, suffering from these symptoms. Edwards

13

made clear that he did not believe addiction to cocaine is an excuse for crime, yet he admitted that a cocaine addict would suffer impairment of his ability to conform his conduct to the requirements of the law. Edwards testified that despite his addiction, Jones would have always known the difference between right and wrong.

Another defense expert testified that Jones has an I.Q. of 78, placing him between the fifth and ninth percentiles of the population. The expert testified that standardized tests revealed that Jones had little ability to control his impulses, but admitted that his motivation to get the right answer during his testing appeared to "vary." She opined that he was able to conform his conduct to the requirements of the law, "provided he's not impaired in some other way."

Jones, 748 So. 2d at 1017.

Although Jones acknowledges that trial counsel did pursue mental health mitigation, he argues that trial counsel did not adequately investigate, prepare, and present evidence on this issue. We disagree. This is not a case where a mental health defense was considered and then summarily rejected. Rather, mental health mitigation was vigorously pursued, the jury was instructed on statutory mitigation, and the trial court found mitigation . . . . Accordingly, trial counsel's performance regarding the presentation of mitigation was not deficient . . . .

Jones II, 949 So. 2d at 1035.

The record supports the description by the Florida Supreme Court of the mental health defense presented by Jones's attorneys, and reasonable jurists would not debate the decision of the district court to deny relief on this ground. It is not debatable that the Florida Supreme Court reasonably applied clearly established federal law.

14

*E. Waiver of Grounds Not Argued in the Application*

Jones has waived the right to a certificate of appealability on every other ground stated in the state and district courts. Jones's application for a certificate of appealability comprises eight pages, twenty-four numbered paragraphs, two summary citations of Supreme Court precedent, and conclusory statements like, "Certainly, reasonable jurists might differ on this issue." We have overlooked these deficiencies and construed Jones's application as arguing specifically for a certificate on four of the grounds he stated in the state and district courts, but we will not entertain the possibility of granting a certificate of appealability on any other ground because Jones does not provide facts, legal arguments, or citations of authority that explain why he is entitled to a certificate on those other grounds.

We have repeatedly required litigants to identify errors and provide arguments about their entitlement to relief. This rule means that a litigant who fails in his initial brief even to allege an error waives the right to relief based upon that allegation. See, e.g., United States v. Magluta, 418 F.3d 1166, 1185 (11th Cir. 2005). It also means that we will not grant relief based upon an allegation raised where a litigant "fail[s] to elaborate or provide any citation of authority in support of the . . . allegation." Flanigan's Enters., Inc. v. Fulton County, 242 F.3d 976, 987 n.16 (11th Cir. 2001). We have not treated petitioners seeking writs of

15

habeas corpus any differently from other litigants.  See Philmore v. McNeil, 575 F.3d 1251, 1259 & n.2 (11th Cir. 2009); Isaacs v. Head, 300 F.3d 1232, 1253 n.6 (11th Cir. 2002).

This rule applies with equal force to petitioners seeking a certificate of appealability.  In Pardo v. Secretary, Florida Department of Corrections, we held that because Pardo had not argued that his attorney was ineffective for agreeing to try several murder counts in a single trial in his application for a certificate of appealability he had "waived the issue in this court."  587 F.3d 1093, 1103 (11th Cir. 2009).  Several of our sister circuits have also applied this rule about waiver to applications for certificates of appealability.  See Ortiz v. Quarterman, 509 F.3d 214, 215 (5th Cir. 2007); United States v. Springfield, 337 F.3d 1175, 1178 (10th Cir. 2003); Beatty v. United States, 293 F.3d 627, 632–33 (2d Cir. 2002).

The rules and statute that govern writs of habeas corpus and certificates of appealability, as well as our local rules, support our application of the waiver rule in this setting.  By rule, in the district court, a petition for a writ of habeas corpus must "specify all the grounds for relief available to the petitioner."  Rules Governing § 2254 Cases, Rule 2(c).  Moreover, no court may issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right" and the certificate itself "shall indicate which specific issue

16

or issues satisfy" that standard. 28 U.S.C. § 2253(c)(2), (3). We agree with the Second Circuit that this rule and statute "contemplate a specific identification of the grounds claimed to warrant relief" in the application for a certificate of appealability. Beatty, 293 F.3d at 632. Our local rules also support this conclusion. Federal Rule of Appellate Procedure 27 requires that every motion "state with particularity the grounds for the motion . . . and the legal argument necessary to support it," Fed. R. App. P. 27(a)(2)(A), and our local rules identify an application for a certificate of appealability as a motion. See 11th Cir. R. 27-1(d)(2) (listing an application for a certificate of appealability as a motion upon which a single judge is authorized to act). Eleventh Circuit Rule 22-2, which provides that applications for a certificate of appealability may be as long as a principal brief filed in an ordinary appeal, further supports requiring applicants to specifically identify arguably meritorious issues and provide legal arguments. See 11th Cir. R. 22-2. Rule 22-2 prevents litigants from attributing absent or undeveloped arguments to a lack of room to argue.

We will not permit Jones to apply for a certificate of appealability without identifying and explaining the claims that he believes to be arguably meritorious. "Requiring that all claims be raised . . . is no more burdensome for a petitioner requesting a [certificate of appealability] than it is for a party on direct review,

17

where the waiver doctrine is routinely applied." <u>Brewer v. Quarterman</u>, 475 F.3d 253, 256 (5th Cir. 2006).  Moreover, a "prisoner who has unsuccessfully tendered numerous claims to a district court will often sensibly focus his appellate efforts on the one or two claims he considers most promising."  <u>Beatty</u>, 293 F.3d at 632.

## IV.  CONCLUSION

Jones's application for a Certificate of Appealability is **DENIED**.