846 So.2d 461 (2003)
Marshall Lee GORE, Appellant,
v.
STATE of Florida, Appellee.
Marshall Lee Gore, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC01-1524, SC02-684.
Supreme Court of Florida.
April 17, 2003.
*464 R. Glenn Arnold of Arnold & Wilkins, P.A., Pensacola, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Curtis M. French, Senior Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Marshall Lee Gore, an inmate under sentence of death, appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1),(9), Fla. Const. For the reasons that follow, we affirm the denial of Gore's postconviction motion and deny the petition for habeas corpus.

FACTS
The facts of the case are set out in this Court's 1992 opinion affirming Gore's conviction and sentence.
Susan Roark was last seen alive on January 30, 1988, in Cleveland, Tennessee, in the company of Marshall Lee Gore. Gore had planned to travel to Florida with a friend from Cleveland. While waiting for his friend at a convenience store, Gore struck up a conversation with Roark. Gore then entered Roark's car, a black Mustang, and they drove away.
Gore accompanied Roark to a party at the home of a friend of hers. Roark had planned to spend the night at her friend's home. Sometime between 11:30 and 12:00, Roark left to drive Gore home. She never returned. The following day Roark's grandmother reported her missing. She had been expected home by 7 a.m. that morning.
Gore arrived in Tampa on January 31, driving a black Mustang. He convinced a friend to help him pawn several items of jewelry later identified as belonging to Roark. Gore then proceeded to Miami, where police subsequently recovered Roark's Mustang after it was abandoned in a two-car accident. Gore's fingerprint was found in the car, as well as a traffic ticket which had been issued to him while he was in Miami.
On April 2, 1988, the skeletonized remains of Roark's body were discovered in Columbia County, Florida. The naked body was found in a wooded area which had been used as an unauthorized dumping ground for household garbage and refuse. Expert testimony established that the body was placed in its location either at the time of death or within two hours of death.
Gore v. State, 599 So.2d 978, 980 (Fla.), cert. denied., 506 U.S. 1003, 113 S.Ct. 610, 121 L.Ed.2d 545 (1992).
In addition to this evidence, the State introduced the testimony of two other witnesses. Specifically, Lisa Ingram testified that she "was riding in a car with Gore on February 19 when she saw a woman's purse in the back seat. She testified that Gore stated that the purse belonged to `a girl that he had killed last night.'" Id. at 983. We concluded on appeal that "this testimony was admissible as an admission with regard to the Roark homicide." Id. Further, the State presented the collateral *465 crime testimony of another victim, Tina Corolis:
The testimony of Tina Corolis was admitted as evidence of a collateral crime. Corolis was a casual acquaintance of Gore's, whom she knew as "Tony." In March of 1988, Gore called Corolis at her home and told her that his car had broken down and he needed a ride to it. After they had driven around for several hours, Gore revealed a knife, gained control of the car, and drove to a partially wooded dumping area off a dirt road. He put the knife to Corolis' stomach, forced her to undress, and raped her. He then dragged her out of the car, punched her face against a rock, strangled her, and stabbed her in the neck, arms, legs, and buttocks. Shortly thereafter Gore pawned several items of Corolis' jewelry and then proceeded to Kentucky in her car.
Id. We concluded on direct appeal that the "cumulative effect of the numerous similarities between the two crimes is the establishment of a unique modus operandi which points to Gore as the perpetrator of the Roark homicide." Id. at 984. The jury found Gore guilty of first-degree murder, kidnapping, and robbery. See id. at 980.
The jury recommended a sentence of death by a vote of eleven to one, and the trial court followed this recommendation after finding the following aggravating circumstances: (1) Gore had previously been convicted of other violent felonies; (2) the murder was committed while Gore was engaged in a kidnapping; (3) the murder was committed for financial gain; and (4) the murder was cold, calculated, and premeditated. See id. at 986. The judge concluded that Gore's poor childhood and antisocial personality were insufficient mitigation to outweigh the aggravating circumstances. See id.
Gore raised seven issues on direct appeal.[1] This Court found six of Gore's claims to be without merit, but struck the CCP aggravator. See id. at 987. This court performed a harmless error analysis and concluded that based on the three remaining aggravators and the lack of substantial mitigation, there was no reasonable probability that the trial court would have imposed a life sentence without the CCP aggravator. Accordingly, this Court affirmed the convictions and sentence of death. See id.
Gore filed an amended motion to vacate the judgments of conviction and sentence in which he made multiple claims of error. Following a Huff[2] hearing, the trial court granted a hearing only on Gore's ineffective assistance of counsel allegations during the guilt and penalty phases. The trial court found the majority of the claims to be procedurally barred because the claims raised substantive issues on the merits that were not properly before the court in a postconviction motion.
After an evidentiary hearing at which Jimmy Hunt, Gore's trial counsel, was the only witness, the trial court entered an order denying all of Gore's ineffectiveness *466 claims for postconviction relief. Gore now appeals the trial court's summary denial of eleven of his postconviction claims[3] and the trial court's denial of relief of the ineffectiveness claims during the guilt and penalty phases following the evidentiary hearing. He also petitions this Court for habeas corpus relief.

3.851 APPEAL
As an initial matter, we dispose of several of Gore's claims because they are procedurally barred or facially or legally insufficient,[4] conclusively refuted by the record,[5] or without merit as a matter of law.[6]
As to Gore's assertion that the State committed a Brady violation in failing to turn over a phone book containing exculpatory or impeachment material that was in its possession, or, in the alternative, defense counsel was ineffective for failing to procure the book, we conclude that the trial court did not err in denying this claim as being insufficiently pled.
As to any Brady violation, a defendant must prove:
The evidence at issue must be favorable to the accused, either because it *467 is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.
Way v. State, 760 So.2d 903, 910 (Fla.2000) (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). For Brady purposes, suppression of evidence is prejudicial only if the information is material. See Strickler, 527 U.S. at 282, 119 S.Ct. 1936.
In this case Gore alleged that the State improperly withheld a phone book containing either the names of exculpatory witnesses or "considerable and compelling evidence that was obviously exculpatory." However, this claim was insufficiently pled in the trial court because Gore cited no facts that supported the allegation. Other than the conclusory statement that "the State violated discovery rules and case law for either concealing or otherwise failing to disclose the book," Gore presented no factual basis that the "book" ever existed, that the State ever had the book in its possession and concealed the book, or that the book contained material exculpatory information. Gore did not list the names from the phone book of people who could have provided exculpatory information, nor did he state what exculpatory information these witnesses could have provided. In sum, Gore left the trial court with absolutely no idea what evidence was "withheld," how that evidence was material, or how he was prejudiced by the State's failure to disclose it. Gore's ineffective assistance of counsel claim on this issue was similarly insufficiently pled due to the same lack of a factual basis.[7] The trial court did not err in summarily denying these claims as insufficiently pled.

Ineffective Assistance of Counsel
We next address whether the trial court erred when it denied Gore relief on his allegations of ineffective assistance of counsel following an evidentiary hearing. To establish a claim that defense counsel was ineffective, a defendant must establish deficient performance and prejudice, as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Rutherford v. State, 727 So.2d 216, 218 (Fla.1998). As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Second, as to the prejudice prong, the deficient performance must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. See id. at 694, 104 S.Ct. 2052; Rutherford, 727 So.2d at 220. Further, when it is clear that the defendant cannot establish prejudice under the second prong of Strickland, the deficiency prong need not be evaluated. See Rutherford, 727 So.2d at 221.
A. Guilt Phase Ineffective Assistance of Counsel
In this appeal, Gore alleges that his trial counsel was ineffective for failing to move for a change of venue due to *468 pretrial publicity. An evidentiary hearing was held on this claim.[8] In reviewing a defendant's postconviction motion alleging ineffective assistance of counsel, this Court defers to the factual findings of the trial court to the extent that the findings are supported by competent, substantial evidence, but reviews de novo the application of the law to those facts. See Stephens v. State, 748 So.2d 1028, 1031-32 (Fla.1999). In its order denying relief on this issue, the trial court in this case found:
Mr. Hunt testified that there was no "media blitz" concerning this case, and the Defendant produced no evidence at the hearing to the contrary. Mr. Hunt moved for individual voir dire, which the Court granted, and the record of voir dire shows no evidence that the prospective jurors had been unduly affected by any pretrial publicity. The Defendant has not demonstrated ineffectiveness regarding this allegation.
The record reveals that Hunt was able to conduct individual voir dire on all the jurors who were seated regarding their potential exposure to media coverage. Further, at the evidentiary hearing, Hunt testified that there was very little electronic or print media coverage either prior to or during the trial. Hunt further testified that he talked to the defendant about a change of venue but decided not to seek one because, compared to other murder trials, there was relatively little known about Gore's case in the county.
Hunt was the only witness at the evidentiary hearing. Gore has not presented evidence that Hunt's description of the level of publicity surrounding the trial was inaccurate or that the jury was otherwise tainted by pretrial publicity. Thus, the trial court's findings that there was no "media blitz" surrounding this trial and that the prospective jurors had not been unduly affected by any pretrial publicity are supported by competent, substantial evidence and, accordingly, will not be disturbed by this Court.
Applying the law to the trial court's factual findings, we conclude that Gore has not demonstrated how Hunt's strategic decision not to seek a change of venue was "not reasonable under the norms of professional conduct." Rolling v. State, 825 So.2d 293, 298 (Fla.2002). Thus, Gore is unable to establish that trial counsel's performance was deficient under the first prong of Strickland.
Moreover, even if counsel's performance was deficient, Gore has neither alleged nor demonstrated how such deficiency prejudiced him by undermining confidence in the outcome of the trial. In determining prejudice in a claim that counsel has been ineffective in failing to move for a change of venue, this Court has stated that the defendant must, at a minimum, "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court." Wike v. State, 813 So.2d 12, 18 (Fla.2002) (quoting Meeks v. Moore, 216 F.3d 951, 961 (11th Cir.2000)). Gore has presented no evidence *469 to indicate that the trial court would have granted the motion for the change of venue. Therefore, he cannot establish prejudice under the second prong of Strickland. We hold that the trial court did not err in denying this claim following the evidentiary hearing.
B. Penalty Phase Ineffective Assistance of Counsel
In this claim, Gore alleges that trial counsel was ineffective for failing to investigate and provide mental mitigation information to experts and for failing to present such information during the penalty phase. The trial court held an evidentiary hearing on this claim.[9]
In its order denying the relief on this issue, the trial court found:
In this claim the Defendant alleges that trial counsel was ineffective in discovery and presentation of mitigating evidence at the penalty phase. According to the amended motion, the Defendant has a mild to medium brain damage, attention deficit disorder, paranoia, and a history of polysubstance abuse, and the sentencing jury never heard of those afflictions or his intoxication and child abuse. The amended motion alleges that, if given an evidentiary hearing, "witnesses including Barry Crown, Ph.D, family members and relatives of Marshall Gore, any and all witnesses at trial and those persons present with Marshall Gore near the time of the crime can be called as witnesses." Although granted an evidentiary hearing, the Defendant presented no testimony from any of the just-listed people and failed to prove the conclusory allegations contained in the amended motion.
Instead, Mr. Hunt testified that he interviewed the Defendant's mother and father, three sisters, and his aunt and uncle with the aim of developing mitigating evidence. Other than the mother and uncle, the Defendant's family was less than helpful. A sister that counsel thought would testify refused to do so and later told counsel that the Defendant threatened to kill her if she testified. The Defendant's father told Mr. Hunt that, if called to testify, he would do everything he could to see that the Defendant was sentenced to death.
Mr. Hunt also testified that he contacted the Defendant's prior counsel in Miami who sent him several mental health evaluations and that he secured a copy of the Defendant's federal PSI that included a psychiatric evaluation. Counsel also secured the appointment of psychiatrist Umesh Mhatre and psychologist Harry Krop, who both evaluated the Defendant. Both doctors diagnosed the Defendant as having an antisocial personality disorder.
Dr. Krop did not testify at the penalty phase, and counsel testified at the hearing that Dr. Krop told him he did not think his testimony would benefit the Defendant. Dr. Mhatre did testify at the penalty phase, and the Court found that nonstatutory mitigation had been established based on the testimony from Mhatre, the mother, and [the] uncle.

*470 Based on the testimony at the evidentiary hearing, it is obvious to this Court that trial counsel conducted a reasonable investigation and had strong, strategic reasons for presenting the evidence he did at the penalty phase or for not calling other witnesses.... The Defendant failed to prove that counsel was deficient in regards to the penalty phase and that he was prejudiced by any deficient representation.
All of the trial court's statements regarding Hunt's testimony at the evidentiary hearing are supported by the postconviction record and the original trial record. Furthermore, to the extent that Gore argues that trial counsel ineffectively failed to provide experts or the jury with evidence as to Gore's drug use and suicide attempt, this claim is conclusively refuted by the record.
At the evidentiary hearing, Hunt testified that he provided the experts with everything that he had at his disposal that might assist them in evaluating Gore, including that Gore attempted suicide as a young man and went through a drug overdose. When questioned as to why Hunt did not present testimony at the penalty phrase regarding Gore's drug overdose, Hunt testified that it was a judgment call because, in his view, the jury generally does not view a previous drug overdose as a mitigator. Furthermore, Hunt testified that there was no evidence of drug abuse at the time of the crimes. There is nothing in the record before us that contradicts this testimony. The trial court's finding that "trial counsel conducted a reasonable investigation and had strong, strategic reasons for presenting the evidence he did at the penalty phase or for not calling other witnesses" is supported by competent, substantial evidence and will not be disturbed by this Court.
Applying the law to the trial court's factual findings, we conclude that Gore has failed to establish how trial counsel's performance fell below reasonable standards of professional competence. This Court has held that when an attorney has made a tactical decision not to present mitigating evidence after a full investigation, counsel is not ineffective. See generally Porter v. State, 478 So.2d 33, 35 (Fla. 1985). Moreover, an attorney's reasoned decision not to present evidence of dubious mitigating value does not constitute ineffective assistance. See Gorby v. State, 819 So.2d 664, 675 (Fla.2002). In this case, there is no indication that the investigation conducted by Gore's counsel was incomplete. Furthermore, there is no evidence that could lead this Court to conclude that counsel's decision not to present certain evidence in mitigation was anything other than a reasonable trial strategy. Thus, Gore cannot demonstrate deficiency under the first prong of Strickland.
Moreover, even if counsel was deficient, Gore has neither alleged nor demonstrated how such deficiency prejudiced him by undermining confidence in the sentencing outcome. Thus, we conclude that the trial court did not err in denying this claim following an evidentiary hearing.

PETITION FOR WRIT OF HABEAS CORPUS
In Gore's first habeas claim he asserts that appellate counsel was ineffective for not raising the sufficiency of the evidence of premeditation on direct appeal.[10] In Rutherford v. Moore, 774 So.2d 637, 643 *471 (Fla.2000), we summarized the basis for a claim of ineffective assistance of appellate counsel:
Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel....
When analyzing the merits of the claim, the criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial counsel. Thus, the Court's ability to grant habeas relief on the basis of appellate counsel's ineffectiveness is limited to those situations where the petitioner establishes first, that appellate counsel's performance was deficient because the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and second, that the petitioner was prejudiced because appellate counsel's deficiency compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. If a legal issue would in all probability have been found to be without merit had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective. This is generally true as to issues that would have been found to be procedurally barred had they been raised on direct appeal.
(Citations and internal quotation marks omitted.)
In this case, Gore's counsel raised seven issues on direct appeal. See Gore, 599 So.2d at 980. There is no indication that appellate counsel was less than zealous in advocating those claims. To the contrary, appellate counsel's effective advocacy convinced this Court that the evidence was insufficient to support the CCP aggravator. See id. at 986.
We conclude that there is no basis for finding appellate counsel's performance on appeal to be deficient for failure to specifically argue the insufficiency of evidence as to premeditation. Further, Gore cannot establish prejudice because the evidence presented on appeal was sufficient to support the jury's verdict of first-degree murder. Thus, we deny Gore relief on this claim.
Next, Gore argues that appellate counsel was ineffective for not raising on direct appeal the failure of the trial court to excuse juror Hollingsworth for cause. This issue is without merit because defense counsel did not run out of peremptory challenges prior to the jury being sworn. See Trotter v. State, 576 So.2d 691, 693 (Fla.1990) (stating that to show reversible error, a defendant must show that all peremptories have been exhausted and that an objectionable juror had to be accepted). Indeed, Hunt reaffirmed during the evidentiary hearing that he did not exhaust all of his peremptory challenges during voir dire. Thus, Gore cannot now demonstrate any prejudice. We deny Gore relief on this claim.
In his last claim Gore argues that appellate counsel was ineffective for failing to raise on direct appeal the issue of Gore possibly having been seen shackled by the jury pool immediately prior to voir dire. This issue was not preserved for appellate review. The record reveals that the court offered trial counsel the opportunity to voir dire the jury pool regarding whether or not they had witnessed Gore being shackled. Trial counsel declined because he felt it would "emphasize" the issue. Thus, this issue was not preserved for appeal and, in the absence of fundamental error, appellate counsel cannot be ineffective for failing to raise an unpreserved claim. See Rutherford, 774 So.2d at 645; Hardwick v. Dugger, 648 So.2d 100 (Fla.1994).
*472 This issue is not fundamental error. In Sireci v. Moore, 825 So.2d 882 (Fla.2002), in holding that appellate counsel was not ineffective for failing to argue on direct appeal that the defendant's shackling in the presence of the jury violated the defendant's constitutional rights, this Court noted that
there is nothing in the record that leads us to conclude that the jury ever saw Mr. Sireci in restraints. Indeed, the trial court here made every effort to keep the petitioner's restraints from being viewed by the jury by placing tables in front of his seat.... The longstanding principle that trial judges must have discretion to properly manage their courtrooms, in combination with a complete absence of evidence indicating any prejudice to the petitioner, requires this Court to deem this argument without merit.
Id. at 888. Similar to Sireci, in this case there is nothing in the record to indicate that the trial court erred in the manner in which this issue was handled or to conclude that there was any prejudice to Gore that rises to the level of fundamental error. Thus, appellate counsel was not ineffective for failing to raise this issue on appeal. We deny Gore relief on this claim.

CONCLUSION
For the above reasons, we affirm the lower court's denial of Gore's rule 3.851 motion for postconviction relief and deny the petition for a writ of habeas corpus.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Gore argued that the trial court erred in (1) denying the motion to suppress Gore's statements; (2) allowing the State to present evidence of collateral crimes; (3) denying a motion for continuance regarding a defense witness and in not allowing Gore to attend that witness's deposition; (4) denying the motion for acquittal as to the kidnapping charge; (5) excusing the victim's stepmother from the rule of sequestration; (6) allowing the prosecutor to question the defense expert about Gore's sanity at the time of the offense; and (7) finding the CCP, prior conviction, and murder in the course of a kidnapping aggravators. See Gore, 599 So.2d at 980-87.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] Gore alleges that the trial court erred in summarily dismissing his claims that trial counsel was ineffective for failing to object to the following: (1) the State of Florida's jurisdiction to try Gore; (2) the prosecutor's misconduct rendered the trial fundamentally unfair; (3) there was insufficient evidence of premeditation; (4) the prosecutor's comments during voir dire improperly advised the jury that the death penalty was mandatory in certain circumstances; (5) Gore's mental health evaluation was inadequate pursuant to Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (6) the trial court minimized the jury's role during sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (7) the trial court prepared its sentencing order without giving the defendant an individualized hearing in violation of Spencer v. State, 615 So.2d 688 (Fla.1993); (8) the trial court improperly failed to excuse jurors who were properly challenged for cause; (9) the trial court had an improper ex parte communication with at least one prospective juror; (10) the trial court should have ordered a change of venue because pretrial publicity precluded the selection of a fair and impartial jury; and (11) the State committed a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in failing to turn over a phone book containing exculpatory or impeachment material that was in its possession, or, in the alternative, defense counsel was ineffective for failing to procure the book.
[4] Claims (2), (3), (4), (6), (8), and (9) are procedurally barred because these claims, which concern issues that should have been raised on direct appeal, are not properly presented in a motion for postconviction relief. Gore cannot now attempt to resurrect these issues as ineffective assistance of counsel claims on appeal to this Court by making conclusory allegations of counsel's ineffectiveness. Moreover, the record conclusively refutes these claims.
[5] To the extent that Gore argues in claim (1) that trial counsel was ineffective for failing to argue that the State lacked jurisdiction to try Gore, this claim is conclusively refuted by the record. The record reflects that in moving for judgment of acquittal Gore's trial counsel argued that the trial court lacked jurisdiction to try Gore. Moreover, the substantive issue raised in claim (1) is without merit as a matter of law. The State had jurisdiction to try Gore because Susan Roark's body was found in Florida.
[6] The substantive issue raised in claim (7) is without merit as a matter of law. This Court decided Spencer, 615 So.2d at 688, which mandated the requirement of an individualized hearing prior to sentencing, after Gore's trial and 1992 direct appeal. Thus, at the time of Gore's trial and direct appeal, there was no error in preparing a sentencing order without giving the defendant a hearing. See Nelms v. State, 596 So.2d 441, 442 (Fla.1992); see also Asay v. Moore, 828 So.2d 985, 991 (Fla.2002) (holding that counsel is not ineffective for failing to object to sentencing procedures contrary to Spencer, when sentencing occurred prior to the Spencer decision).
[7] Further, to the extent that Gore asserted in his motion that he told trial counsel that the book existed and trial counsel failed to procure the book, at the evidentiary hearing Gore's postconviction counsel extensively questioned Jimmy Hunt, Gore's trial counsel, regarding the potential exculpatory witnesses and information provided by Gore. Hunt testified that he thoroughly investigated to the best of his ability all the potential exculpatory witnesses and information of which he was made aware. Gore presented no testimony or evidence to contradict Hunt's testimony.
[8] We note that the trial court gave Gore ample opportunity to present evidence at the evidentiary hearing on his multiple claims of ineffectiveness of counsel at the guilt and penalty phase contained in his postconviction motion. We conclude that the record fails to demonstrate error in denying relief following an evidentiary hearing on any of the claims of ineffectiveness raised in his postconviction motion. However, because on appeal Gore focuses his claims of ineffectiveness on trial counsel's failure to move for change of venue and trial counsel's failure to investigate or provide mitigation to the mental health experts or the jury, we address these assertions in more detail.
[9] In a separate claim, Gore alleged in the trial court that "mental health experts who evaluated Mr. Gore did not render adequate mental health assistance as required by Ake v. Oklahoma." The trial court denied the Ake claim as procedurally barred in that it could and should have been raised on direct appeal. In this appeal, Gore presents no argument regarding the Ake claim. Thus, we conclude that the trial court properly denied an evidentiary hearing on this claim because it is either procedurally barred or insufficiently presented for review. See generally Shere v. State, 742 So.2d 215, 217 n. 6 (Fla.1999) (finding that issues raised in appellate brief which contain no argument are deemed abandoned).
[10] Gore's second habeas claim, that appellate counsel was ineffective for failing to argue that the circumstantial evidence was insufficient to support first-degree murder, is derivative of Gore's first claim. For purposes of this appeal we address and dispose of these two claims together.