KHOUZAM, Judge.
William John Montez appeals from an order summarily denying his motion for postconvietion DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. Because the postconviction court’s order and attachments do not refute Mr. Mon-tez’s claim that he is entitled to further DNA testing of the murder weapon, we reverse and remand for further proceedings.
Mr. Montez was charged with the premeditated murder of his live-in girlfriend, Ms. Martinez, whose nearly nude body was found bruised and strangled near Nebraska Avenue in Tampa. A woman’s nylon stocking was tied around her neck. The medical examiner estimated that the time of death was about 3 a.m., and the State’s theory of prosecution was that Mr. Montez murdered her at their home and then dumped her body several miles away.
The State conducted DNA and blood analysis testing on several items, including a pillowcase from the victim’s bed and a couple of her fingernail clippings. Crime laboratory analysts from the Florida Department of Law Enforcement found blood on one of Ms. Martinez’s fingernails that was consistent with both her blood and that of Mr. Montez. On another fingernail from her other hand, they found her blood but not Mr. Montez’s. The pillow case revealed DNA from an unknown third person. Semen found in Ms. Martinez’s vagina came from Mr. Montez. The nylon stocking was not tested because it lacked a sufficient amount of the oils necessary to perform the tests.
Mr. Montez claimed that he is innocent of this crime. He based his rule 3.853 motion on the existence of newly available, much more sensitive “touch DNA” testing, alleging that if the nylon stocking is tested, *1244 it will reveal DNA of the person who tightened the stocking around Ms. Martinez’s neck. The DNA will allegedly match the murderer but not Mr. Montez. In addition, Mr. Montez alleged that the victim’s former boyfriend arranged to meet her on the night she was killed, and two witnesses testified at trial that on the night of the murder, Mr. Montez did not leave the mobile home park where he shared a trailer with Ms. Martinez. Mr. Montez also alleged that the victim worked as an escort and that she could have met a client who strangled her and left her body on the street.
The postconviction court ordered the State to respond to Mr. Montez’s facially sufficient motion. See Fla. R.Crim. P. 3.853(c)(2). In response, the State contended that the identity of the perpetrator was not a genuinely disputed issue at trial, pointing to the testimony of “eyewitnesses” — the same people whose testimony Mr. Montez claimed tends to exculpate him — as well as the blood serology and the DNA tests previously mentioned. In addition, the State pointed out that DNA matching neither the victim nor the defendant was found in the victim’s car and in her bedroom. Even in the face of evidence of DNA that matched neither Ms. Martinez nor Mr. Montez, the jury nevertheless convicted Mr. Montez of her murder. Thus, the State argued that any additional DNA testing would be merely cumulative.
In its order denying relief, the postcon-viction court essentially adopted the State’s response and concluded, based upon the testing that had been conducted as well as “other evidence introduced at trial,” that Mr. Montez had “failed to demonstrate a reasonable probability that the requested DNA testing would have lead [sic] to his acquittal or to the imposition of a lesser sentence.” The court attached excerpts from the transcripts of the trial testimony of the neighbors who had observed Mr. Montez at the trailer park on the night of the murder as well as of the testimony relating to the DNA and blood tests.
Rule 3.853(c)(3) provides that upon review of the State’s response, the postcon-viction court must either enter an order on the merits or set a hearing. When the court does enter an order on the motion, it must make the findings outlined in rule 3.853(c)(5):
(A) Whether it has been shown that physical evidence that may contain DNA still exists.
(B) Whether the results of DNA testing of that physical evidence likely would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.
(C) Whether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.
In this case, however, the postconviction court failed entirely to address the questions set out in subparts (A) and (B) of the rule: whether the nylon stocking is still available for DNA testing and whether the results of any testing would be admissible at trial. Subpart (B) is of particular importance in this case because the defendant is relying upon the existence of newly developed testing procedures that he claims would prove his innocence. Neither the State’s response nor the postconviction court’s order addresses whether such testing of the nylon stocking is available or feasible.
Ultimately, though, the postconviction court concluded that the trial evidence was such that the defendant had not demon *1245 strated that he would have been acquitted had this new DNA evidence been admitted at his trial. However, neither the court’s order nor its attachments refute Mr. Mon-tez’s claims that the nylon stocking would contain the DNA of the person who strangled Ms. Martinez and that Mr. Montez’s DNA would not be found on the stocking. These allegations in Mr. Montez’s sworn motion must be taken as true. And in this case involving largely circumstantial evidence, it is difficult to imagine that the existence of another person’s DNA on the murder weapon would not have created at least some reasonable doubt in the minds of the jurors about Mr. Montez’s guilt.
From the minimal documentation attached to the postconviction court’s order, we cannot conclude that this is a case in which the defendant is attempting to use DNA evidence to exonerate himself in the face of a record demonstrating overwhelming evidence of guilt. See, e.g., Consalvo v. State, 3 So.3d 1014, 1016 (Fla.2009) (citing Galloway v. State, 802 So.2d 1173 (Fla. 1st DCA 2001)). For example, this case is unlike Gore v. State, 32 So.3d 614 (Fla. 2010), another largely circumstantial evidence case, in which the court reviewed the evidence connecting the defendant to the murder when rejecting his claim for postconviction DNA testing. According to the supreme court’s opinion, Gore was the last person seen with the victim, he was spotted in Florida in the victim’s car twenty-four hours after her death, he received a traffic ticket while driving the victim’s car, he had someone pawn the victim’s jewelry, and he admitted to a witness that a purse in the victim’s car belonged to a girl he had killed “last night or a few nights ago.” Id. at 620. If evidence of similar weight was used to convict Mr. Montez, it is not apparent from the post-conviction court’s order and attachments. Therefore, we hold — based on the allegations in the motion and the documents in the summary record — that the postconviction court has not refuted Mr. Montez’s claim that there is a reasonable probability that he would have been acquitted if the touch DNA evidence had been admitted at trial.[1]
Accordingly, we reverse the order denying Mr. Montez’s rule 3.853 motion for postconviction DNA testing, and we remand for the postconviction court to conduct an evidentiary hearing on the motion.
Reversed and remanded.
WHATLEY and LaROSE, JJ., Concur.

. As noted above, for purposes of this appeal, we must accept as true Mr. Montez’s claim that the killer would have left traces of his DNA on the stocking that was used to strangle the victim.