NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

WILLIAM JOHN MONTEZ, )
DOC #166014, )
                              )
        Appellant, )
                              )
v. )        Case No. 2D16-4525
                              )
STATE OF FLORIDA, )
                              )
        Appellee. )
_____ )

Opinion filed October 4, 2017.

Appeal pursuant to Fla. R. App. P.
9.141(b)(2) from the Circuit Court for
Hillsborough County; Kimberly K.
Fernandez, Judge.

William John Montez, pro se.


WALLACE, Judge.

        William Montez appeals from the postconviction court's summary denial of

his second motion for postconviction DNA testing, which was filed under Florida Rule of

Criminal Procedure 3.853. Because the postconviction court failed to make a required

finding that there was reliable proof to establish the authenticity of the alleged murder

weapon that was submitted for DNA testing, we reverse and remand for an evidentiary

hearing to determine the item's authenticity.

## The Factual and Procedural Background

Because we have previously discussed at length the facts of this case, we will not recite them in detail here. See Montez v. State, 86 So. 3d 1243 (Fla. 2d DCA 2012). However, for purposes of this opinion, it suffices to say that in April 2000, Mr. Montez was found guilty of first-degree murder and sentenced to life in prison. Over ten years later, Mr. Montez filed his initial motion for postconviction DNA testing under rule 3.853. Mr. Montez requested DNA testing of the murder weapon, a black nylon stocking, which was found tied in a knot around the victim's neck. This black nylon stocking was admitted into evidence as State's Exhibit #5 at trial.[1] The postconviction court denied the motion, finding that Mr. Montez failed to demonstrate a reasonable probability that the requested DNA testing would lead to his acquittal. On appeal, this court reversed the postconviction court's summary denial of Mr. Montez's motion and remanded for an evidentiary hearing. See Montez, 86 So. 3d at 1245.

Upon remand, the postconviction court entered an order granting Mr. Montez's motion in November 2012. In addition to finding that the alleged murder weapon still existed and that there was a reasonable probability that the defendant could be acquitted based upon the results of DNA testing of the alleged murder weapon, the postconviction court found, in pertinent part, as follows:

> The Court hereby finds that DNA testing of the evidence (State's Exhibit #5), the alleged murder weapon, likely would be admissible at trial based upon the establishment of the chain of custody maintained by law enforcement and the Clerk of the Court, as the evidence custodian. There exists reasonable proof to establish that any such DNA testing, performed by the Florida Department of Law Enforcement

---

[1]The nylon stocking appears to have been originally inventoried as Item #12 by the Tampa Police Department.

(FDLE) would be authentic and admissible at future proceedings.

After granting the motion, the postconviction court entered another order releasing the alleged murder weapon to the care, custody, and control of the Tampa Police Department (TPD) for transport to FDLE. However, when the alleged murder weapon was handed over to TPD for transport, the item was apparently found in an open, unsealed paper bag.[2] As a result, the unsealed paper bag containing the item was placed in a manila envelope, which was sealed and given to FDLE for testing.

After FDLE completed its examination of the alleged murder weapon, the postconviction court held an evidentiary hearing regarding the written results of the DNA testing. Over Mr. Montez's objections that there were chain of custody and contamination problems, a FDLE technician testified that she found the DNA of both Mr. Montez and the victim on the alleged murder weapon. After the hearing concluded, the postconviction court entered a "notice of compliance" with this court's mandate. Consequently, Mr. Montez filed a petition for writ of mandamus in this court to compel the circuit court to issue a final order on the postconviction DNA proceedings. We dismissed the petition for Mr. Montez "to file a separate motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853." Montez v. State, 192 So. 3d 53 (Fla. 2d DCA 2015) (unpublished disposition).

Upon this court's dismissal of his petition, Mr. Montez filed a second motion for postconviction DNA testing. In his motion, Mr. Montez requested the

---

[2]At a status hearing, the assistant state attorney informed the court that the alleged murder weapon "had been opened" and "exposed to the elements." At a later evidentiary hearing regarding the DNA test results, an FDLE technician testified that when she received the item for testing, it was found in an "unsealed" paper bag.

postconviction court to conduct a DNA test of the actual murder weapon. Although he

acknowledged that a black stocking had been the subject of prior DNA testing, Mr.

Montez asserted that the postconviction court failed to make the requisite finding that

the item containing the tested DNA was authentic. In particular, Mr. Montez alleged that

FDLE tested the wrong nylon stocking because it was most likely mishandled or

replaced with an identical stocking.[3] He further alleged that even if the actual murder

weapon was tested, the item was contaminated due to its mishandling and the fact that

it was found in an open, unsealed bag.

After finding that Mr. Montez's motion for postconviction DNA testing was

facially sufficient and then ordering the State to respond to it, the postconviction court

summarily denied the motion. It reasoned that because the alleged murder weapon had

"already been tested for DNA" and the test results matched the DNA profiles of both Mr.

Montez and the victim, no further testing was required. It further found that FDLE did

not test the wrong item because, at trial, a crime scene technician identified State's

Exhibit #5 as the stocking that was tied around the victim's neck. Accordingly, the

postconviction court concluded that because State's Exhibit #5 was released for DNA

testing in 2012, the correct item was tested.

Mr. Montez filed a motion for rehearing. In his motion, he argued that the

postconviction court not only relied improperly upon the inconclusive testimony of

_____

[3]In support of his allegation that the murder weapon could have been mishandled or replaced with an identical stocking, Mr. Montez highlighted the TPD Property Record Form, which was dated June 23, 1999. This form apparently indicates that item #12 was placed into the same package with an identical black stocking. Mr. Montez also appeared to argue that the tested nylon stocking was not the actual murder weapon because the tested nylon stocking contained a knot and had hairs in it, whereas State's Exhibit #5 allegedly did not have such features.

certain witnesses but also failed to address the "serious chain of custody and laboratory procedural errors." The postconviction court denied the motion, finding that even if a different stocking had been substituted in the place of State's Exhibit #5, it "could not order DNA testing of an item that cannot be found." The postconviction court further reasoned that even if the original item had been replaced and then later found and tested for DNA evidence, it would not be admissible in evidence at a future hearing because the circumstances were indicative of probable tampering. This appeal followed. Mr. Montez makes the same arguments on appeal.

## Discussion

When a postconviction court enters an order on a motion for postconviction DNA testing under rule 3.853, the court "must make the findings outlined in rule 3.853(c)(5)." Montez, 86 So. 3d at 1244. Specifically, the postconviction court must find:

> (A) Whether it has been shown that physical evidence that may contain DNA still exists.
>
> (B) Whether the results of DNA testing of that physical evidence likely would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.
>
> (C) Whether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.

Fla. R. Crim. P. 3.853(c)(5) (emphasis added); see also Montez, 86 So. 3d at 1244.

Here, as the rule clearly provides, the postconviction court was required to make the above three findings when it ruled on Mr. Montez's first rule 3.853 motion.

Although the postconviction court made the first and third findings, it failed to make the second finding. More specifically, the postconviction court failed to determine whether reliable proof existed to establish the authenticity of the black nylon stocking that was submitted for DNA testing, i.e., it was the alleged murder weapon. Instead, the postconviction court found that "there existed reasonable proof to establish that <u>any such DNA testing</u>, performed by [FDLE] would be authentic and admissible at future proceedings." To be sure, while rule 3.853 requires the postconviction court to find that any DNA testing of the evidence would be admissible, it also requires the postconviction court to find that reliable proof exists to establish that the item containing the tested DNA is authentic. Here, no such proof was introduced into evidence at the hearing. Indeed, the postconviction court's reliance upon the trial testimony of the crime scene technician was not sufficient to establish reliable proof of the item's authenticity because the testimony did not account for the twelve-year gap between the time of trial and the time that the item was tested. Nor did the testimony account for the discovery of the item in an allegedly open, unsealed paper bag before it was sent to FDLE for testing. Accordingly, because the postconviction court failed to determine whether the tested stocking was authentic, the postconviction court erred in relying upon the DNA results of an unauthenticated item to deny Mr. Montez's second motion.

We express no opinion on whether the nylon stocking that was submitted for testing was or was not the actual murder weapon. We also express no opinion on whether the State will be required to submit this item for further testing or a different item for initial testing. Instead, we hold only that based on the limited record before us, an evidentiary hearing is necessary—as this court discussed in our 2012 opinion—to

determine whether the tested nylon stocking was not contaminated and is what the State claims it is, i.e., the murder weapon that was tied around the victim's neck. See Swafford v. State, 946 So. 2d 1060, 1061 (Fla. 2006) (requiring the postconviction court to "enter an order making findings as to whether the evidence which was tested is authentic, has been contaminated, or such other findings in respect to the tested evidence as the circuit court determines to be appropriate" (quoting Swafford v. State, 871 So. 2d 874 (Fla. 2004) (table report of unpublished order))); cf. Espinoza v. State, 13 So. 3d 1088, 1090 (Fla. 3d DCA 2009) (discussing Swafford and indicating that where the defendant raises "some specific claim regarding possible contamination of the DNA samples," the reviewing court may remand the case to the postconviction court to determine the item's authenticity, even if the item has already been the subject of DNA testing).

Finally, we note our disagreement with the postconviction court's alternative findings on rehearing. The postconviction court first found that even if a different stocking had been substituted in the place of State's Exhibit #5, it "could not order DNA testing of an item that cannot be found." However, in reaching this conclusion, the postconviction court erroneously assumed that if an authentic item of evidence is replaced with a substitute, the authentic item cannot be found. Such a conclusion does not follow from the premise. Further, the postconviction court also erroneously assumed that even if the authentic item had been replaced with a substitute and was later found and tested for DNA evidence, the authentic item would not be admissible at a subsequent hearing because of the probability of tampering. But here again, such a conclusion does not necessarily follow from the premise; one cannot

- 7 -

exclude the possibility of a satisfactory explanation for the supposed switch of one item for another.

Therefore, because the postconviction court erred in failing to determine whether reliable proof exists to establish the authenticity of the black nylon stocking, we reverse the postconviction court's order summarily denying Mr. Montez's second rule 3.853 motion. On remand, the trial court shall conduct such further proceedings as may be necessary to make the requisite findings and to enter an appropriate order on the motion.

Reversed and remanded.

SLEET and ROTHSTEIN-YOUAKIM, JJ., Concur.